```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

BILLY RAY RILEY,

   Plaintiff,

vs.            No. 06-2628-B/V

ROBERT HENRY, et al.,

   Defendants.

```
               ORDER TO COMPLY WITH PLRA
           ORDER ASSESSING $350 CIVIL FILING FEE
                    ORDER OF DISMISSAL
        ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
                             AND
                NOTICE OF APPELLATE FILING FEE
```

   Plaintiff Billy Ray Riley, Tennessee Department of Correction ("TDOC") prisoner number 106987, who is currently an inmate at the Northwest Correctional Complex ("NWCX")[1] in Tiptonville, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 on September 20, 2006 in connection with his confinement at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. The Clerk shall record the defendants as WTSP Classification Coordinator Robert Henry; WTSP Deputy Warden Henry

---

[1] The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

Steward; and TDOC Assistant Commissioner for Operations Roland Colson.

I.   Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $350 required by 28 U.S.C. § 1914(a).[2] The in forma pauperis statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and submitted an in forma pauperis affidavit containing a certification by the inmate trust fund officer. Although Plaintiff has not submitted a certified trust fund account statement, the information supplied by Plaintiff is sufficient to permit assessment of the filing fee. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is ORDERED that, within thirty (30) days of the entry of this order, Plaintiff file a certified copy of his trust fund account statement for the six months prior to the commencement of this action. It is further ORDERED that the trust fund officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust fund account for the six months

---

[2] Effective April 9, 2006, the civil filing fee increased from $250 to $350.

immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in Plaintiff's account, and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to Plaintiff's account, the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If Plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the NWCX to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II.  Analysis of Plaintiff's Claims

The complaint alleges that, in 2004, Plaintiff, while incarcerated at the WTSP, was classified to go to the South Central Correctional Facility ("SCCF") in Clifton, Tennessee but, after

4

incurring a disciplinary infraction for an unspecified offense, Plaintiff was reclassified and transferred to the NWCX without his consent. In 2005, Plaintiff was reclassified and transferred back to the WTSP without his consent. In 2006, Plaintiff was again reclassified and transferred back to the NWCX due to unspecified disciplinary infractions. Plaintiff contends there are several other facilities in Tennessee that house close security inmates and that will accept any inmate, including the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee and the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee. Plaintiff is from east Tennessee, and he contends he should be housed closer to his family. Plaintiff contends that basing his prison assignment on his disciplinary record constitutes unlawful discrimination.[3]

Plaintiff seeks either release from TDOC custody or assignment to the RMSI or NECX.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)  seeks monetary relief from a defendant who is immune from such relief.

---

[3] Plaintiff mentions that he is black, but the complaint does not suggest that his race was a factor in determining the prison to which he was assigned.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirety.

Plaintiff's claim that he was transferred to different prisons in the TDOC system without his consent appears to be an attempt to assert a claim under the Due Process Clause of the Fourteenth Amendment. The law is clear that prisoners have no right to challenge their assignment to a particular prison. Meachum v. Fano, 427 U.S. 215 (1976); Turnboe v. Fundy, 27 F. App'x 339, 340 (6th Cir. 2001) (inmate's "transfer does not implicate a Fourteenth Amendment liberty interest because a prisoner has no right to be incarcerated in a particular prison"); Geiger v. Prison Realty Trust, Inc., 13 F. App'x 313, 315 (6th Cir. 2001) ("Geiger failed to state a due process claim based upon his transfer from the WCF to the NFCF. A prisoner has no inherent constitutional right to be confined in a particular prison."); Ward v. Dyke, 58 F.3d 271, 274 (6th Cir. 1995).

Plaintiff's allegations of discrimination appear to be an attempt to assert a claim under the Equal Protection Clause of the Fourteenth Amendment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 335 (6th Cir. 1990) (quoting Johnson v. Morel,

876 F.2d 477, 479 (5th Cir. 1989) (en banc )).[4] If the plaintiff is a member of a class that is not "protected," the plaintiff's class "merits constitutional protection only insofar as the state actor could have had no conceivable rational basis for distinguishing it." Purisch v. Tennessee Technological Univ., 76 F.3d 1414, 1424 (6th Cir. 1996).

In this case, the complaint contains no allegation that Plaintiff has been discriminated against because of his membership in a protected class. As previously mentioned, see supra p. 5 n.3, the complaint mentions that Plaintiff is black but does not aset that white inmates with similar disciplinary records are assigned to the prison of their choice. Instead, the complaint appears to allege that basing prison assignment on an inmate's disciplinary history is itself an act of discrimination. The law is clear that prisoners are not a protected class for equal protection purposes. Harbin-Bey v. Rutter, 420 F.3d 571, 576 (6th Cir. 2005); Berry v. Traughber, 48 F. App'x 483, 485 (6th Cir. 2002); Garrison v. Walters, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); Heddleston v. Mack, No. 00-1310, 2000 WL 1800576, at *2 (6th Cir. Nov. 30, 2000) ("prisoners incarcerated at the same institution as Heddleston who wished to mail items weighing more than one pound on January 9, 1999, do not constitute a protected

---

    [4]    Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right. In this case, however, the complaint does not allege that Plaintiff's prison assignments constituted an undue burden on his right to exercise a fundamental right.

class"); Aldred v. Marshcke, No. 98-2169, 1999 WL 1336105, at *1 (6th Cir. Dec. 20, 1999); Shehee v. Luttrell, 199 F.3d 295, 301 (6th Cir. 1999); Preston v. Hughes, No. 97-6507, 1999 WL 107970, at *1 (6th Cir. Feb. 10, 1999); Cook v. Cook, No. 96-3419, 1997 WL 121207, at *1 (6th Cir. Mar. 14, 1997). Finally, although Plaintiff's claim is arguably subject to rational-basis scrutiny, it is inconceivable that the assignment of a close custody inmate to a close custody institution would not satisfy that standard.

A one-year statute of limitations is applicable to § 1983 actions in Tennessee. Tenn. Code Ann. § 28-3-104(a); see Wilson v. Garcia, 471 U.S. 261, 266-268 (1985); Berndt v. Tennessee, 796 F.2d 879 (6th Cir. 1986). At a minimum, Plaintiff's transfer from the WTSP to the NWCX in 2004 is plainly time barred.

For all the foregoing reasons, the Court DISMISSES the complaint, in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

III. Appeal Issues

The next issue to be addressed is whether Plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in

good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff is not taken in good faith and Plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case.[5] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

---

[5] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the second dismissal of one of his cases as frivolous or for failure to state a claim.[6]

IT IS SO ORDERED this 6th day of February, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff previously filed Riley v. England, et al., No. 1:95-cv-00152 (E.D. Tenn. dismissed as frivolous May 19, 1995).

This is arguably the third meritless action filed by Plaintiff, as he previously filed Riley v. Blankenship, et al., No. 96-2619-Ml (W.D. Tenn. dismissed Dec. 31, 1996). In Riley, District Judge Jon Phipps McCalla issued an order on June 25, 1996 that dismissed portions of the complaint as lacking any arguable basis in fact and law and directed Plaintiff to file an amended complaint within 20 days stating the factual basis for his remaining claim. Plaintiff was warned that "[f]ailure to amend the complaint within the prescribed period shall result in dismissal of the action under 28 U.S.C. § 1915 as lacking any arguable basis in fact or law." 06/25/96 Order at 5. Plaintiff did not file an amended complaint, but it appears the action was dismissed for failure to prosecute, with the Court inadvertently neglecting to assess a "strike."